Oral argument not to exceed 15 minutes per side. Anna Louise Lennon for the appellant. You may proceed under the supervision of Melissa Salinas. Good morning. Good morning. Good morning, your honors, and may it please the court. My name is Louisa Lennon, and I'm here today on behalf of Michelle Myricks. I would like to reserve three minutes for rebuttal. With my limited time today, I'm going to begin with the last issue in our brief, which is the restitution calculation. This court has been clear in three separate published opinions, United States v. Riddell, United States v. Eunice, and United States v. Finkley, that restitution may not include intended loss. In Riddell, this court found that including intended loss in the restitution order amounted to plain error. Here, the government produced a loss and restitution amount of $352,593 by subtracting the amount it said Ms. Myricks rightfully earned from the amount Ms. Myricks requested in salary payments from Payroll One, a third-party payroll company. How is this presented to Judge Lawson? What did Judge Lawson say about everything you're saying? In the trial, the amounts underlying the loss... You're making a sentencing point. Correct. How was this sentencing argument framed below if it was framed below? Below, throughout the trial and at sentencing, a central dispute was the amounts underlying the loss and restitution amount. The court, Judge Lawson, did not make any findings about which numbers he was using to calculate the loss and restitution amount. What I'm getting at, and I know you weren't the counsel below, you get a report and recommendation from probation. They came up with this number. What did the attorney below for your client say in response to that number? The response to that number was challenges to the government's inclusion of some payments to Michigan state agencies. The court below sustained those objections, so those numbers were removed. However, at sentencing, the district court said it was, quote, not sure, end quote, about the operative loss amount. We see from that quote and from the muddled record below about the numbers being used for the amount Ms. Myricks was supposed to earn, the amount she was actually paid, and the amount she requested, that there was a lot of confusion below about what this loss amount should have been. That is an issue because in a case like this, the loss amount goes to the culpability of the defendant. But here, it was especially problematic because the court then ordered that exact loss amount as the restitution. So this didn't affect the sentence. This wasn't something that went to affect the sentence. This is what she owed, right? And what I'm really trying to get at is, did the counsel below give Judge Lawson a chance to deal with the arguments you're making today? The counsel below was repeatedly, throughout the entire case, bringing up that there was just a lack of clarity in Great Trades record keeping. Her signed employment contract was missing. Mr. Bolya, her supervisor, said that he was unsure about the amount she was supposed to make. So the court really was on notice that this was a central issue about how much this loss amount would be. However... Wasn't it the case that your client's counsel did not raise an objection to the calculation in the district court? So there were the objections to the inclusion of the amount owed to the Michigan State agencies. Those were sustained. Correct. He's asking more directly what I was trying to ask very politely. You're going to just keep dealing. At some point, just a suggestion, take on the hard point. If you run from it, we'll just keep... It's very hard to hide from... Is it plain error or not? That's what we're getting at. So if it's this court's position that the repeated... What's your position? Is it plain error or not? My position is it should be abuse of discretion. However, even if this court finds that it's plain error, in United States v. Riddell, this court found that including intended loss in the restitution order amounted to plain error. And here, this was intended loss because the government never introduced any documentation that Great Trades actually paid out this higher amount of $400,162. The bank records that it introduced from Ms. Myrick's bank account of how much she was paid by Great Trades was $346,185. And in the indictment, when it introduced the loss amount, the government calculated those loss amounts using the amount she received in her bank account. And it's only when we get to trial and sentencing that they're using this higher number that there's no evidence that Great Trades actually paid out. The more obvious it was during the trial that the number wasn't real, the more conspicuous the omission that this objection was not raised at sentencing. That just makes you wonder what's going on. I think there were many objections. And frankly, one of her main arguments at the trial level was that all of Great Trades' records and all of this... I just want to make sure you understand the point I'm making. Yes. Let's just say for... I'm just going to make it up. It's a seven-week trial. Every day of trial, this exact objection is made. She loses. Start all over again with sentencing. How strange not to raise the point that came up every day in a seven-week trial. That's what I'm trying to figure out. How could that happen? I think it just goes to how confusing all of these numbers in this case were. And you have the district court itself at sentencing saying that it was not sure about the operative loss amount. And in situations like this where it is such a muddled record, the district court... And this court said so in United States v. White. The district court has an obligation to explain the numbers it's using to calculate the loss amount. And here there was no explanation that it was choosing to use this higher requested number. And there was not even a finding about which number it was using for her salary amount. And so it's hard to make an objection if there's not even anything on the record explaining where these amounts came from. And the thing she was repeatedly raising was that there wasn't documentation of one half of this calculation, which is how much she was supposed to be paid. So the district court... The other side of this is that the district court needed to explain it, as I just said, with United States v. White. And Agent Cummings, the government's witness at trial, and the PSR made clear that there was a difference between these two numbers. On the one hand, you have the higher number that was just shown by emails of her asking to be paid a certain amount. And on the other hand, you have the lower number, which is her actual bank records. And there's no explanation of the district court's choice to use the higher number. And in United States v. Kilpatrick, this court found that in a similar case, where the district court had, quote, thrown up its hands too soon on figuring out the loss and restitution amount, that they remanded to the district court to submit additional evidence, hold an evidentiary hearing, conduct further proceedings limited to the restitution award, or if determining complex issues of fact related to the cause of the victim's loss would complicate or prolong the sentencing, the district court could forego restitution. And that's what we're asking for here, is a remand for the district court to recalculate and explain which numbers it's using for this loss and restitution amount. So along with restitution, we are asking this court to remand the loss amount for recalculation. At trial, the government bore the burden to prove the loss amount by a preponderance of the evidence and beyond speculation. And that clearly did not happen here because we have the district court itself at sentencing saying it's not sure about the operative loss amount. And instead of demanding accurate accounting or conducting its own inquiry, the district court accepted the government's loss number and ordered restitution of this amount. If there's no further questions on the restitution, I would like to rely on our briefing for the evidentiary issue. Okay. Thank you very much. Thank you. Good morning. Good morning, Your Honors. Good morning, Your Honors. I'm Sarah Youngblood, and I represent the United States. I'll begin with restitution. In short, there is no error here at all. Judge Lawson got this correct. As Judge Sutton and Judge Clay indicated, Ms. Myrick's never made any objection to the loss caused to great traits here. First, let me clarify, we're not at all dealing with intended loss here. We are dealing only with actual loss, which is the same figure used to calculate restitution. In this case, we determined actual loss by beginning with, as you do for loss and restitution, how much money was taken from the victim. Here, this was proven at trial in two ways. First, the 28 emails that Ms. Myrick sent to the payroll company directing payroll one, withdraw the amount of money I am telling you from great traits bank account. We have that on paper. Can I just stop you there? Yes. Let me answer this question, which I'm embarrassed I don't know the answer to. Was the actual loss that became restitution anything more than simply each month what her real salary was and what she got on top of that? Is that how it was calculated? Or is there a tax component to it that messes that up? Yes. Let me take a step back and sort of walk through this. There's two components here. One is gross versus net pay. The other is actual loss in terms of all the money that was paid to Ms. Myrick's and then what component of that she should have earned, what component of that was illegitimate embezzlement. So starting with just how much money went out, the difference in gross and net, Your Honor is correct, there were tax withholdings withdrawn between how much money Ms. Myrick's directed herself, pardon me, how much money Ms. Myrick's How about I'll just make a hypothetical and just tell me what I'm missing here just to make sure I'm getting this. Say the person is entitled to $10,000 a month. They're asking for $30,000 a month. So at one level you'd say it's $20,000, right? That's the difference? Sure. And they're not entitled to the $20,000. If it weren't for taxes, withholding and all of that, would that $20,000 delta, that differential, be all that's going on here? Yes. That what gets complicated is withholding for taxes and other stuff. Yes. I believe that is the difficult component of what Ms. Myrick's is arguing for loss. I also want to be clear to the court, we're not dealing with intended loss in any measure. I'm sticking with the actual loss point. So what's the fight about? I mean, the withholding is what the withholding is. I agree. I suspect this was why there was no objection raised at the district court level. This was very clear in trial. There were about 50 exhibits on what the loss amount was. This was clear both to Ms. Myrick's and her trial counsel as well as Judge Lawson. He had all that information from trial. He also had the pre-sentence investigation report. And in doing actual loss, did he account for the fact that she didn't get, say, money that went to Michigan taxes? Yes. Well, the PSR makes very clear calculations four times in the record. This is at paragraphs 18, 26, 27, and 96. And the pre-sentence investigation officer writes very clearly, this is the amount of money taken in total, well, the gross pay taken in total, subtracted with how much she was legitimately entitled to earn. What we are left over with is this $352,000 figure. And that's what Judge Lawson adopted rightfully. Did she not subtract from it state taxes, for example? No, because those had already been withdrawn. Oh, okay. Yes. This shouldn't be that hard. Taxes can be a little tricky to explain. She would have a point if part of the restitution was money that she never got because it went to Michigan taxes, right? I disagree, Your Honor, because restitution here is about the loss to the victim. It is not about what a defendant receives. It's about what was taken from Great Trades. And here it's quite clear that every dollar that she directed be withdrawn from her e-mails is actually what was withdrawn. Counsel is correct. We don't have Great Trades' own withdrawal records, but this is a preponderance standard, and we've met that through the repeated e-mails from Ms. Myrick's plus the testimony from the Payroll 1 employee, Patrick Bessnow, Record Document 120, page 1,195. Would the victim be able to go back to, just stick with one tax collection agency, go back to Michigan and say, I want $5,000 back because it was withheld and I've not gotten it? Yes, I believe she could have disputed that. Or could do it now. In other words, could now file a claim, I paid you taxes on income I ultimately did not get? Yes. Could you do that through the federal government as well? I'm not sure the intricacies of the federal tax. You're a federal lawyer. How do you know the state law and not the federal law? Well, we had some state agency specialists testify in this trial for the familiarity there. But in short, the important. But that's the supposed, not supposed, that's the unfairness she's focused on. I agree that that's the perceived unfairness she's focused on, but that's not really the legal issue here. The question is whether Judge Lawson made any error. He did not. He correctly calculated loss, both in terms of the guidelines and restitution, and he explained it sufficiently given what he had observed at trial, how clear the PSR was, and the fact that Ms. Myrick's never made an objection, much less questioned those figures. Are there any further questions about restitution or loss? That's all she's arguing, so we don't need to hear any other stuff. I'm happy to answer any questions about the evidentiary issues if the Court has any. We're good. Thank you. Thank you very much. All right. We'll hear the rebuttal. Ms. Lennon. I'd like to talk with my limited time about this taxes issue. So post hoc in the government's briefing, they point to tax withholdings to account for the difference between this number that she requested, which, again, the only proof they have of this higher number is the e-mail she sent asking for more money. The proof of her bank records, the lower – It's a preponderance standard. Why isn't that suffice to support, in a plein air setting, the District Court judge's decision? Because if Great Trades paid out that amount, why can't they introduce the record showing they paid it? And this taxes – Well, but that's the point. That's where I started. That's why the system of an adversarial process works so much better when the lawyers present the arguments before the District Court, not the Court of Appeals. Even if we're dealing with plein air here, what the government did introduce about the taxes amount was two different W-2s with two different tax withholding amounts. Neither of those withholding amounts actually account for the difference between these two numbers. So there clearly is a problem in this record keeping that the District Court needed to make actual findings about and explain where it was getting these numbers and how it was choosing to use this higher number. And this confusion is exactly why it's appropriate here to remand to the District Court for a tax expert to explain whether these withholdings could be returned to Great Trades and these other issues that are not for this court to determine right now. And I just want to respond to the point that this was so clear. It was not so clear. This was a muddled record of different amounts, and the taxes introduced did not equal this difference. And the payroll one employee, Vesna, when asked by the government about taxes, he could not supply an actual tax withholding number that would account for the difference between these two amounts, nor has the government ever introduced an actual number or explanation that accounts for this difference. It just vaguely points to tax withholdings while choosing to use this higher number that it doesn't have as much proof for. Okay. Thank you very much.  We appreciate it. Thank you, Ms. Lennon, for your, I don't know if this is your first argument at the Sixth Circuit, but it seems like the odds are high it was, and nice job. Thank you very much. Thank you, Ms. Salinas, for helping us out. Thank you to the government, and the case will be submitted.